[L. A. No. 10816. In Bank.—January 28, 1932.]

ROSCOE S. PORTER et al., Appellants, v. FRANK HILTON et al., Respondents.

Wright & McKee and C. M. Monroe for Appellants.

Stickney & Stickney for Respondents.

THE COURT.—A petition for rehearing was granted in the above-entitled cause to give further consideration to the questions therein presented. We are satisfied with the decision as originally written by Mr. Justice Shenk and

herewith adopt said decision as the opinion of the court upon rehearing. It follows:

"This is an appeal by the plaintiffs from a judgment for damages in their favor in an action for rescission and general relief. The appeal is on the judgment roll alone. The material facts shown by the findings are as follows:

"On and prior to June 23, 1926, the defendant R. M. Fowlks was the owner of lots 15 and 16, block 223, Pacific Beach, in San Diego county. These will be referred to as the first two lots. On May 24, 1926, Fowlks granted to one Earl Taylor, as agent, authority to sell said two lots for the sum of $3,000 net to Fowlks and at the same time authorized Taylor to sell two other lots in the same tract, owned by Fowlks, for the same price. On May 27, 1926, Taylor executed and delivered to one C. E. Hamilton of the real estate firm of Hilton & Hamilton, an agreement to sell to Hamilton all four lots for the sum of $7,000 to be paid in instalments, with a down payment of $100, which Taylor retained. Prior to June 21, 1926, Taylor notified Fowlks that the agreement of sale had been executed and delivered to Hamilton. On June 21 Hamilton approached the plaintiffs Roscoe S. Porter and Johnston O. Miller, soliciting the sale to them of, and they agreed to buy, the first two lots for the sum of $7,000 on terms of $500 down and notes for $1,000 in six months, $2,750 in one year and a like amount in two years. Prior to June 23 neither Hilton nor Hamilton knew of Fowlks and both believed Taylor to be the owner of all of said lots; and on that day Hamilton notified Taylor of the agreement to sell to the plaintiffs, whereupon Taylor stated to Hamilton that it would be necessary to consult Fowlks, who lived in Redlands, for approval as to the terms of sale. Taylor interviewed Fowlks, submitted to him Hamilton's proposition that the balance of $5,500 be represented by two notes for $2,750 each secured by a trust deed on the first two lots only and that the other two lots be deeded to Hilton and Hamilton free and clear. Fowlks was unwilling to accept this security, but did agree to deed the first two lots to the plaintiffs, take the two trust deed notes for $2,750 each, assign one of them to Hilton and Hamilton and take a note for $2,750 from Hilton and Hamilton secured by a trust deed on the other two lots. This was done and the deal was closed. On November 20,

1926, the plaintiffs paid the interest on the notes executed by them. Prior to that time they discovered that the first two lots were not worth $7,000, but had not discovered that Hilton and Hamilton held one of the $2,750 notes, nor had they ascertained the falsity of certain statements made to them by Hamilton in connection with the transaction until March 7, 1927, whereby they considered themselves to have been defrauded by such false representations. This action was brought on March 10, 1927, charging fraud on the part of Hamilton and that Fowlks was his principal and had ratified his acts. The court further found that Hamilton was guilty of the fraud charged, including the charge that Hamilton had represented to each of said plaintiffs that said first two lots were worth $7,000 and had represented to each of said plaintiffs, out of the presence of the other, that the other had agreed to buy at that price, all of which was not true; that at no time were Hilton and Hamilton, or either of them, agents of Fowlks in the transaction; that Fowlks was an innocent party in the transaction and had not ratified the acts of Hamilton in connection with the sale of the property to the plaintiffs, and that the market value of the first two lots at the time of the sale thereof to the plaintiffs was $5,000.

"The court concluded, not in exact words, but by necessary implication, that the attempted rescission could not equitably be confirmed, but that under the prayer for general relief the plaintiffs were entitled to damages against the defendant Hamilton in the sum of $2,000, which was the difference between the actual value of the property which the plaintiffs received and the value which it would have had if Hamilton's representations as to its value had been true. Hamilton has not appealed, nor has his partner Hilton.

■ "As the evidence is not before us, the findings of the court are deemed to be supported and all intendments are in their favor. ■ With this as the necessary premise it must be assumed that Taylor was duly authorized in writing to enter into a binding contract of purchase and sale with Hamilton and that when Taylor entered into such a contract with Hamilton the defendant Fowlks was legally bound to convey all four lots to Hamilton. This obligation became binding before Hamilton made any of the misrepre-

sentations found to have been made, and when it became binding Fowlks as seller and Hamilton as buyer were dealing at arm's length and were not in the relationship of principal and agent. Inasmuch as Fowlks was thus legally bound there was nothing unusual in the transaction by which on request he should convey directly to those designated by Hamilton as the grantees. Under these circumstances Fowlks could in no sense be deemed to have ratified or be bound by the misrepresentations of Hamilton to his vendees. It must also be held that the evidence was sufficient to support the implied finding of the court that the rescission could not be confirmed as to Fowlks for the reason that Fowlks, being an entirely innocent party in the transaction, could not be placed in his original position. Under the plaintiffs' prayer for general relief the court allowed them damages against Hamilton, the guilty party, and by its judgment made it certain that the plaintiffs would secure the benefit of that judgment by offsetting the amount thereof against the trust deed note held by Hamilton and his partner Hilton. ■ The court fixed the damages on the basis of the difference between the conceded market value of the property of $5,000 and the value it would have had if Hamilton's representations as to the value of $7,000 had been true. This is the proper measure in such cases. (*Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729]; *Wood* v. *Niemeyer,* 185 Cal. 526 [197 Pac. 795].)''

We conclude that the plaintiffs have received all to which they were entitled under the findings and that the judgment should be and it is hereby affirmed.